IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

RICHARD ALLEN NEPTUNE,

        Plaintiff,

        v.                                    Civil Action No. 1:12-CV-57

MICHAEL ASTRUE,
Commissioner of Social Security,

        Defendant.

**REPORT AND RECOMMENDATION THAT MR. NEPTUNE'S
MOTION FOR SUMMARY JUDGMENT BE DENIED AND COMMISSIONER'S
MOTION FOR SUMMARY JUDGMENT BE GRANTED**

**I. INTRODUCTION**

**A. Background**

Plaintiff, Richard Allen Neptune, filed his Complaint on April 9, 2012, seeking judicial review pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the judicial review enunciated in 42 U.S.C. § 405(g), of an adverse decision by Defendant, Commissioner of Social Security ("Commissioner").[1] Mr. Neptune submitted a supplement to the Complaint on April 23, 2012.[2] Commissioner filed his Answer on June 5, 2012.[3] Mr. Neptune filed his Response to Defendant's Answer, which the Court will treat as a motion for summary judgment, on July 25, 2012.[4] Commissioner filed his Motion for Summary Judgment on August 20, 2012.[5]

---

[1] Dkt. No. 1.

[2] Dkt. No. 6.

[3] Dkt. No. 8.

[4] Dkt. No. 14.

[5] Dkt. No. 15.

**B. The Pleadings**

1. Mr. Neptune's Response to Defendant's Answer

2. Commissioner's Motion for Summary Judgment & Memorandum in Support

**C. Recommendation**

I recommend that:

1. Mr. Neptune's Motion for Summary Judgment be **DENIED** because the ALJ properly considered the VA disability rating, and his decision was based upon substantial evidence.

2. Commissioner's Motion for Summary Judgment be **GRANTED** for the same reasons set forth above.

## II. FACTS

**A. Procedural History**

Mr. Neptune applied for disability insurance benefits and supplemental security income on May 1, 2008, alleging disability as of February 1, 2008, due to depression, post-traumatic stress disorder (PTSD), arthritis, high blood pressure, and stomach problems. (R. 138-45, 167.) The requests were denied in the first instance, and on reconsideration. (R. 80-93, 99-104.) At Plaintiff's request, an administrative law judge (ALJ) held a hearing on January 11, 2010, at which Plaintiff, who was represented by counsel, and a vocational expert testified (R. 36-79.) On January 29, 2010, the ALJ issued a decision finding that Plaintiff could perform a modified range of unskilled, light work. Therefore, the ALJ concluded, Mr. Neptune was not disabled within the meaning of the Act. (R. 15-35.) The Appeals Council affirmed the ALJ's decision. (R. 1-6.) Having exhausted his administrative remedies, Mr. Neptune now brings his appeal to this Court.

**B. Personal History**

Mr. Neptune was born on August 24, 1964, and was forty-five years old on the date of the January 11, 2011 hearing before the ALJ. (R. 43.) Mr. Neptune completed high school and has held several jobs over his lifetime, including motorcycle mechanic, machine operator, inventory supervisor, and project supervisor. (R. 42.) Mr. Neptune was also in the Navy for five years, serving as a radar operator during the Libyan conflict in 1986, and was honorably discharged from the service. Mr. Neptune has been married for eighteen years and has one grown son, although he does not interact with the child. Mr. Neptune currently receives sixty percent disability from the Veteran's Administration.

**C. Medical History**

The following medical history is relevant to the issue of whether substantial evidence supports the ALJ's finding that Ms. Herron is not under a disability and can still perform work in the national economy:

   *1. Physical Health*

Mr. Neptune reports that he was hit by a car when he was approximately nine years old, and has had neck pain on and off throughout the years. (R. 288.) Mr. Neptune has a history of treatment at the Veterans Administration Medical Center (VAMC) dating back to 2002, mainly associated with neck pain, chronic headaches, and depression. (R. 244-399, 419-733.) An x-ray of the cervical spine in 2003 indicated "[m]ild changes of the disc and degenerative disc disease, more prominent than expected for the stated age of 39." (Tr. 253). In December 2007, a VA physician diagnosed Mr. Neptune with hypertension, chronic dorsal arthritis, and hyperlipidemia, and noted that Mr. Neptune's alcohol abuse might interfere with pain therapy. (R. 264.) These diagnoses are consistent

throughout the regular intervals that Mr. Neptune visited the VAMC as evidenced in the Progress Notes in the Record.

Some improvements are noted in the Record, starting in August 2009 when Dr. Horner indicated that Mr. Neptune's back pain was stable, and that he had good range of motion of his extremities and normal neurological findings (R.. 614.) Further, medical records from September and November of 2009 show that Plaintiff had no tenderness of the spine, full range of motion of the hips and spine, and full motor strength at 5/5 (R. 440, 639.)

In May 2010, Mr. Neptune reported to the VAMC with complaints of fainting spells. (R. 684-87.) A complete neurological examination was done, which did not reveal any abnormalities; rather, Dr. Van Cott suggested that the problem might be cardiopulmonary in nature, and that a long term event monitor be considered. (R. 687.) These spells continued over the next couple of months, and after a neurology appointment in Pittsburgh it was suggested that Mr. Neptune stop smoking, lose weight, and cease all driving. (R. 733.)

A medical evaluation performed on July 8, 2008, in response to the application for disability benefits, indicated a finding of non-severe. (R. 418.) That evaluation was affirmed as written on September 19, 2008. (R. 480.)

*2. Mental Health*

In June 2007, the VAMC performed a routine depression screening, which suggested that further testing be done. However, Mr. Neptune declined further screening. (R. ?.) In April 2008, Mr. Neptune returned to the VAMC, this time complaining of symptoms associated with depression. (R. 340-45.) At that consultation, the doctor found severe depression with passive suicidal ideation and recommended treatment. (R. 341-44.) Two months later, at a follow up visit, Mr. Neptune's anti-

4

depressent medication levels were increased. (R. 357-58.) In December 2009, after complaints of medicinal side effects, the VAMC lowered the medication levels, although treatment did continue. (R. 662.) It appears from the Record that the depression stems from combat related experiences. A mental RFC done in June 2008 found that Mr. Neptune's condition did not necessitate a residual functional capacity allowance because he has the mental and emotional capacity for work related activity in a low stress work environment. (R. 416.)

**D. Testimonial Evidence**

Testimony was taken at the hearing held on January 11, 2010. The following portions of the testimony are relevant to the disposition of the case:

When questioned about his VA disability benefits, Mr. Neptune responded:

> I'm receiving a 30-percent disability compensation for my back. I'm receiving a 10-percent service connection for – I got my jaw broke while I was in the Navy. I'm receiving a 10-percent compensation for my left ankle, which I got broken when I was in the Navy. And the way the VA does things, although it's 30, 10, and 10, my disability rating and my compensation is only at 40 percent.

(R. 45.) Mr. Neptune went on to say that he was not receiving disability for post-traumatic stress disorder, but he had a lawyer representing him in those claims with the VA. (*Id.*)

After discussing Mr. Neptune's work history, the ALJ asked him about his medical issues. Mr. Neptune responded that the arthritis in his spine and neck bothered him the most, but that he never had surgery to correct those issues. (R. 52.) Mr. Neptune claimed that his second worst problem was his mental health, including depression, PTSD, and insomnia. (*Id.*) Mr. Neptune testified that these impairments, along with the medications he takes to alleviate them, keeps him from working and doing daily activities. (R. 55-63.)

The ALJ then posed several hypothetical questions to a vocational expert (VE) to determine

if there are jobs in the economy that fit Mr. Neptune's profile. The VE responded that there are jobs at both the light exertional and sedentary levels, nationally and regionally, that fit the profile outlined by the ALJ. (R. 75-78.)

**E. Lifestyle Evidence**

The following evidence concerning Mr. Neptune's lifestyle was obtained at the hearing and through medical records. The information is included in the report to demonstrate how Mr. Neptune's alleged impairments affect his daily life. Mr. Neptune claims that his disabilities have affected his daily life, in that he: does not interact socially with other VFW member, which he once enjoyed doing; does not ride his motorcycle as much as he would like; cannot fish in the same manner as he used to; and has trouble mowing his lawn. Mr. Neptune drinks almost daily, consuming two to eight beers a day, and smokes a pack of cigarettes a day.

### III. THE MOTIONS FOR SUMMARY JUDGMENT

**A. Contentions of the Parties**

Mr. Neptune, appearing *pro se*, has not alleged any specific errors in his Response to Defendant's Answer. Instead, Mr. Neptune has provided the Court with: (1) a summary of his VA benefits award; (2) a compensation and pension examination done in response to Mr. Neptune's petition to increase his current VA disability award; and (3) a letter from VA that acknowledges an increase in VA benefits from forty percent disability to sixty percent disability. From these materials, it appears to the Court that Mr. Neptune is contending that this VA disability determination is cause for a favorable determination by this Court.

Commissioner contends the ALJ's decision is supported by substantial evidence and that the ALJ is not bound by a disability determination by another governmental agency.

**B. The Standards**

   *1. Summary Judgment*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

   *2. Judicial Review*

Only a final determination of the Commissioner may receive judicial review. *See* 42 U.S.C. §405(g), (h); *Adams v. Heckler*, 799 F.2d 131,133 (4th Cir. 1986). Moreover, An ALJ's findings will be upheld if supported by substantial evidence. *See Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 528 (4th Cir. 1998). Substantial evidence is that which a "'reasonable mind might accept as adequate to support a conclusion.'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). Further, the "'possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.'" *Sec'y of Labor v. Mutual Mining, Inc.*, 80 F.3d 110, 113 (4th Cir. 1996) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620,

7

86 S. Ct. 1018, 16 L. Ed. 2d 131 (1966)).

*3. Social Security - Medically Determinable Impairment - Burden.*

Mr. Neptune bears the burden of showing that she has a medically determinable impairment that is so severe that it prevents her from engaging in any substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(1), (d)(2)(A); *Heckler v. Campbell*, 461 U.S. 458, 460 (1983).

**C. DISCUSSION**

Under Social Security regulations, decisions by other government agencies that find a person disabled are not binding on the Social Security Administration. However, these findings do constitute evidence that must be considered. *See* 20 C.F.R. §§ 404.1504, 416.904. The Social Security Administration recently issued a ruling on this subject, titled: "To clarify . . . how we consider decisions by other governmental and nongovernmental agencies on the issue of disability or blindness." SSR 06-03p, 2006 SSR LEXIS 5, 2006 WL 2329939. With regards to other agency findings of disability, the ruling states:

> [W]e are required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies. Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered. . . . Because the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner, we are not bound by disability decisions by other governmental and nongovernmental agencies. In addition, because other agencies may apply different rules and standards than we do for determining whether an individual is disabled, this may limit the relevance of a determination of disability made by another agency. However, the adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases.

*Id.* (internal citations omitted).

Further, courts around the country and in this circuit are universally aligned for the proposition that findings of disability by other agencies are entitled to great weight. *See e.g. Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir. 1983) ("The findings of disability by another agency, although not binding on the Secretary, are entitled to great weight."); *Baca v. Dep't of Health & Hum. Servs.*, 5 F.3d 476, 480 (10th Cir. 1993) ("[T]he ALJ should have considered the VA disability rating in making his decision. 'Although findings by other agencies are not binding on the Secretary, they are entitled to weight and must be considered.'"); *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981) ("A VA rating is certainly not binding on the Secretary, but it is evidence that should be considered and is entitled to great weight."); *Lewis v. Califano*, 616 F.2d 73, 76 (3d. Cir. 1980); *DeLoatche v. Heckler*, 715 F.2d 148, 150 n.1 (4th Cir. 1983) ("Neither the opinion of a treating physician nor the determination of another governmental entity are binding on the Secretary. Nevertheless, we have repeatedly stressed that . . . the disability determination of a state agency is entitled to consideration by the Secretary."); *Watson v. Astrue*, 2009 U.S. Dist. LEXIS 68833, *6-7 (E.D.N.C. Aug. 6, 2009); *Bradshaw v. Astrue*, 2011 U.S. Dist. LEXIS 105096, *21 (W.D.N.C. Sept. 15, 2011).

It is clear from these authorities, both agency and judicial, that the ALJ is required to explain the considerations given to other governmental decisions on the record, and that the ALJ is required to at least give those decisions some weight in determining whether a Social Security disability award is proper. In the instant case, the ALJ was aware of Mr. Neptune's disability rating from the VA because that question was posed by the ALJ at the January 11, 2010, hearing. (R. 45.) Thus, the question turns on whether the ALJ properly considered the VA disability rating in his decision.

The Court first notes that Mr. Neptune has not submitted the actual disability determination from VA; that is, the VA's detailed reasons as to why disability was found. What Mr. Neptune has submitted is a summary of benefits that he receives, in addition to the volumes of medical evidence from the VA, which is presumably what the VA used as a basis in its disability determination. Here, the ALJ considered all of this underlying medical evidence, and in accordance with SSR 06-3p, *supra*. (R.28.) In particular, the ALJ considered the opinion of Dr. Horner, a VA staff physician who treated Mr. Neptune and was of the opinion that Mr. Neptune was unable to work indefinitely. The ALJ found Dr. Horner's opinion on Mr. Neptune's work ability "not only inconsistent with the objective medical evidence of record, but [] contrary to Dr. Horner's own treatment record." (R. 29.) In weighing the rest of the evidence, including that from Mr. Neptune's treating physicians at the VA, the ALJ found that Mr. Neptune did not meet a disability listing and could perform jobs that existed in the economy.

Accordingly, the Court finds that the ALJ properly considered the VA evidence regarding Mr. Neptune's disability. Although the ALJ must consider this evidence, and even give it great weight, she is not bound by another agency determination. Here, the ALJ discredited the opinion regarding work ability based on the objective medical evidence and a determination that Mr. Neptune exaggerates his symptoms and is not fully credible. (*Id*.) Thus, the Court finds that the ALJ's decision was based upon substantial evidence.

## D. CONCLUSION

In sum, the Court finds that the ALJ's decision was based upon substantial evidence, and that the ALJ did not err in denying benefits in light of a favorable disability determination by another governmental agency because the ALJ considered that evidence and found that it did not warrant

significant consideration taking the record as a whole.

## IV. RECOMMENDATION

For the foregoing reasons, I recommend that:

1.  Mr. Neptune's Motion for Summary Judgment be **DENIED** because the ALJ properly considered the VA disability rating, and his decision was based upon substantial evidence.

2.  Commissioner's Motion for Summary Judgment be **GRANTED** for the reasons set forth.

Any party who appears *pro se* and any counsel of record, as applicable, may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

DATED: October 2, 2012          /s/ *James E. Seibert*
                                JAMES E. SEIBERT
                                UNITED STATES MAGISTRATE JUDGE